UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

FILED
AUG 2 3 2017
CLERK

5:17-mj-138

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION FOR AUTHORIZATION TO SEARCH: A residence in Georgetown Housing and vehicles, as described in Attachment A. | AFFIDAVIT IN SUPPORT OF SEARCH WARRANT<br><br>REDACTED |

STATE OF SOUTH DAKOTA   )
                        )
COUNTY OF PENNINGTON    )

I, Justin M. Hooper, being first duly sworn, hereby depose and state as follows:

I am a Special Agent with the Bureau of Indian Affairs (BIA) and as such, I am a Federal Law Enforcement Officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a Special Agent with the BIA since 2010. Prior to my employment with the BIA, I was a police officer and detective with the Flandreau Police Department from 2006 to 2010. I have certifications from the Federal Law Enforcement Training Center (FLETC) Criminal Investigator Training Program (CITP) and the South Dakota Law Enforcement Standards and Training Commission (SDLETC) Basic Police Officer Certification. I have participated in investigations of drug-related offenses to include drug distribution conspiracies. Among other investigative techniques, I have conducted or participated in surveillances, the execution of search warrants, interviews of suspected drug distributors, debriefings of informants and reviews of taped conversations. Through my training and experience conducting drug investigations and investigating drug trafficking groups as a primary responsibility, your affiant has developed knowledge regarding practices utilized by drug traffickers and their organizations when involved in the distribution of controlled substances. These routine practices include:

- The acquisition and concealment of cash which is obtained through the course of drug distribution, and is accumulated to further acquire more quantities of drugs.

- The acquisition and concealment of controlled substances as the product furthering their illegal activities.

1

- The concealment of controlled substances and cash. Those involved in drug distribution will frequently conceal drugs and proceeds obtained through the sale of illegal drugs, in their residences, in vehicles, buried underground, in lock boxes/safes, and on their person.

- The possession of drug distribution and drug use paraphernalia. For the purpose of drug distribution and use, these items include: scales, packaging materials, packaging tools, cutting agents and pipes.

- The possession and use of communication devices including tablets and cell phones. These devices are used in furtherance of the drug distribution business by: contacts with drug customers, contacts with co-conspirators and contacts with drug suppliers. Additionally, these devices are utilized to maintain contact information for co-conspirators and to store notes related to the distribution of controlled substances.

- The possession of documents, notes, ledgers and calendars. These items are maintained to hold drug distribution information such as: contact numbers and names for co-conspirators, drug debt records and accounting information related to drug distribution, locations of other sites associated with the drug distribution business, and information related to ownership and occupancy of residences, vehicles, and assets.

- Drug distribution groups involved in the sale of large amounts of drugs, and involved over an extended period of time, frequently distribute drugs on credit, or front; and utilize numerous drug distributors. These activities necessitate record keeping tracking amounts of drugs which are delivered to numerous distributors, and the amounts of money these distributors owe.

- Drug distributors frequently trade illegal drugs for stolen property and firearms.

- Drug distributors frequently possess photographs which depict associates in their criminal activity, and memorialize activities of co-conspirators.

- Drug distributors frequently possess firearms in the furtherance of their drug activities.

- Cell phones can be used to aid in criminal activity. My training and experience also indicates those who buy/sell/possess/distribute controlled substances often have cell phones in their possession that contain names and phone numbers of customers and suppliers. The names of customers and suppliers are often stored in the internal memory of the cell phone. The phone call times and dates are also stored in the internal memory of the cell phones. Text messages can also be stored in the internal memory of the phone. They will also use these text messages to communicate to each other about drug activity. These same individuals will also use their cellular

phone to capture video and pictures of themselves and/or others in the sale and use of illegal narcotics, by use of cellular phone(s). These photographs and/or videos have shown persons smoking, using, or ingesting, as well as persons flaunting their drugs and/or cash.

- Similarly, based upon Your Affiant's training and experience, memory cards can be used to store information related to criminal activity and can contain digital files. Affiants training and experience also indicates those who buy/sell/possess/distribute controlled substances often have cell phones in their possession that contain names and phone numbers of customers and suppliers. The names of customers and suppliers are often stored in the internal memory of the cell phone. This information can also be saved on memory cards. The same individuals, who use cellular phones, can also use cameras or other equipment to capture video and pictures of themselves and/or others in the sale and use of illegal narcotics, by use of cellular phone(s) or other equipment. These photographs and/or videos have shown persons smoking, using, or ingesting, as well as persons flaunting their drugs and/or cash. These materials can sometimes be stored on memory cards.

Based on the above information and Affiant's training and experience, Your Affiant is requesting a search warrant be issued for the above property due to the fact that those who buy/sell/possess/distribute controlled substances often have additional evidence related to drug activity at the places they frequent or reside. It is believed that further evidence will corroborate the use and/or distribution of controlled substances.

### ITEMS TO BE SEARCHED FOR AND SEIZED

I submit this affidavit in support of an application for a search warrant the following locations, depicted in Attachment A, hereinafter referred to as the RESIDENCE:

- ████████████████████ in Wanblee, South Dakota, 57757 to include the curtilage of the property. The residence is a single-family, single-story residence, white/tan in color. The residence is located in a cluster-housing community.
- Outbuildings and vehicles associated with ████████████ Wanblee, SD 57757 and/or Christopher Yellow Eagle, Tessa Quiver, Norman Quiver, and Phoebe Quiver. The vehicles are further described in Attachment A.
- Your Affiant is also requesting permission to search any people present or arriving at the time the search warrant is executed that are acquainted with

3

Christopher Yellow Eagle, Tess Quiver, Norman Quiver, and Phoebe Quiver or the residence.

I respectfully submit that probable cause exists to believe that the search of the RESIDENCE for the items and information listed in Attachment B hold evidence of offenses involving drug trafficking, particularly 21 U.S.C. §§ 841(a) and 846, hereinafter the TARGET OFFENSES, as well as the identification of individuals who are engaged in the commission of these offenses.

I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation, from discussions with other law enforcement, from my discussions with witnesses, and from my review of records and reports relating to the investigation. Because this affidavit is being submitted for the limited purpose of securing an order authorizing the search of the RESIDENCE for the information listed in Attachment B, I have not included details of every aspect of the investigation.

## PROBABLE CAUSE

On June 13, 2014, Source of Information (SOI) #1 was arrested by officers from the Rapid City Police Department for possession of approximately 19 grams of methamphetamine. South Dakota Division of Criminal Investigation (DCI) Special Agent (SA) BJ George conducted a follow up interview with SOI #1 on June 16, 2014. SOI #1 told the agent that he/she had gotten the methamphetamine from Christopher Yellow Eagle. SOI had purchased an ounce of methamphetamine from Yellow Eagle and paid for half of it up front. SOI #1 had also purchased a half an ounce of methamphetamine from Yellow Eagle previously.

On December 14, 2014, your affiant spoke with SOI #2. SOI #2 informed the agent that Norman "Fats" Quiver was selling methamphetamine. SOI #2 stated that Norman Quiver had approached SOI #2 about buying methamphetamine from him (Norman).

On January 13, 2015, SA Hooper spoke with SOI #2. SOI #2 told the agent that he/she had heard that Tessa Quiver was selling methamphetamine from her home. Tessa resides at ▮▮▮▮▮▮▮▮▮▮ in Wanblee, SD

On January 13, 2015, your affiant conducted a controlled purchase of methamphetamine from Tessa Quiver at ▮▮▮▮▮▮▮▮▮▮ in Wanblee, SD utilizing SOI #2. SD DCI SA Preston Patterson, DCI SA Dane Rasmussen, and FBI SA Daniel Cooper assisted in the operation. The agents purchased four folded paper bindles of methamphetamine for two hundred dollars ($200.00) of BIA DDE confidential advanced funds (CAF). Cynthia

4

Quiver was present during the controlled purchase. The methamphetamine was submitted to the Rapid City Police Department Forensic Laboratory for chemical analysis. The chemical analysis confirmed the substance to be methamphetamine.

On February 12, 2015, Your affiant conducted a controlled purchase of methamphetamine from Tessa Quiver at [redacted] Wanblee, SD utilizing SOI #2. SA Hooper was assisted by BIA DDE RAC Algin Young. The agents purchased a clear plastic baggie containing methamphetamine for four hundred dollars ($400) of BIA DDE CAF. The methamphetamine was submitted to the Rapid City Police Department Forensic Laboratory for chemical analysis. The chemical analysis confirmed the substance to be methamphetamine.

On July 30, 2015, your affiant conducted a controlled purchase of methamphetamine from Norman Quiver at [redacted] utilizing SOI #2. SA Hooper was assisted by BIA DDE SA Tucker Amiotte. The agents purchased two folded paper bindles of methamphetamine for one hundred dollars ($100) of BIA DDE CAF. The methamphetamine was submitted to the Rapid City Police Department Forensic Laboratory for chemical analysis. The chemical analysis confirmed the substance to be methamphetamine.

On February 2, 2016, Oglala Sioux Tribe Department of Public Safety (OST-DPS) officers responded to a call for service about a Nissan Rogue passenger car being stolen from Brian and Jamie Hill. Brian and Jamie were going through a divorce at the time. Jamie let Yellow Eagle borrow the vehicle and he never returned it.

On February 14, 2016, OST-DPS Highway Safety Trooper Ryan Charging Cloud initiated a traffic stop on the Nissan Rogue for a traffic violation. Trooper Charging Cloud ran the license plates of the vehicle which came back as being stolen. The driver was identified as Christopher Yellow Eagle. The officer observed ammunition for a .45 caliber pistol in the vehicle in plain view and smelled burnt marijuana. A further search of the vehicle yielded several license plates, including government plates, drug scales and baggies, and other paraphernalia. A baggie with white crystal substance was seized and tested presumptively positive for meth. The officer seized $985.00 in currency as well. Your affiant later collected this evidence and logged it into the Rapid City Police Department. A used needle was submitted for chemical analysis. The substance in the needle was determined to be methamphetamine.

On February 25, 2016, Bureau of Alcohol Tobacco Firearms and Explosives (ATF) SA Joseph Korth interviewed SOI #3. SOI #3 told the agent that Yellow Eagle was dealing methamphetamine with Deanna Hopkins and that Yellow Eagle would stay in Wanblee on occasion.

On March 4, 2016 and April 18, 2016, ATF SA Joseph Korth and FBI SA Daniel Cooper conducted proffer interviews of SOI #4. SOI #4 told the agents that Yellow Eagle was his source of supply of methamphetamine beginning in 2015. SOI #4 bought eight balls (3.5 grams) of methamphetamine for $200 and ounces for $750. Yellow Eagle was able to acquire 10 to 20 lbs of methamphetamine frequently from sources of supply in Scottsbluff, NE and Denver, CO. SOI #4 had accompanied SOI #4 on trips to meet these sources and had seen Yellow Eagle with 10-20 lbs of methamphetamine. Yellow Eagle was running a large methamphetamine distribution ring in Rapid City and on the Pine Ridge Indian Reservation and would frequently trade methamphetamine for guns.

On September 20, 2016, SA Patterson and your affiant interviewed Tessa Quiver at [redacted] Tessa told the agents that she has a child with Yellow Eagle and was in a relationship with him. Tessa started getting methamphetamine from Yellow Eagle around January of 2014. Yellow Eagle would bring at least an eight ball (3.5 grams) of methamphetamine to her house in Wanblee twice a week. Tessa would get an eight ball from Yellow Eagle and use some and sell some. Several people would come to Tessa's house to see Yellow Eagle including Eric Apple, Edward Big Boy, and Cory Eisenbraun. The most methamphetamine that Tessa saw Yellow Eagle with was a zip-lock freezer bag that was about a quarter to a half full. The weight was estimated to be approximately 1 pound.

On December 12, 2016, SA Cooper conducted a proffer interview with SOI #5. SOI #5 told SA Cooper that he bought eight ball quantities of methamphetamine from Norman Quiver. Quiver was getting his methamphetamine from Yellow Eagle.

On February 13, 2017, SA Patterson and SA Cooper conducted a proffer interview of SOI #6. During this interview, SOI #6 told the agents that he received approximately 10-15 ounces of methamphetamine from Yellow Eagle in total. SOI #6 received 5 ounces for the white Cadillac and an additional 5 to 10 ounces that SOI #6 purchased from Yellow Eagle.

On February 16, 2017, BIA-DDE SA Tucker Amiotte and your affiant interviewed SOI #7 at [redacted] SOI #7 told the agents that he had received approximately a half ounce of methamphetamine from Yellow Eagle since April of 2014 until Yellow Eagle was arrested in March of 2016. SOI #7 would get about 1.75 grams of methamphetamine from Yellow Eagle on a front and would then owe Yellow Eagle $100. SOI #7 also told the agent that he rode with Yellow Eagle on drug transactions. SOI #7 recalled riding with Yellow Eagle to meet with Cory Eisenbraun. Eisenbraun traded a white Cadillac car to Yellow Eagle for a pound of marijuana. SOI #7 also rode with Yellow Eagle to Kyle to meet with Edward Big Boy. Yellow Eagle picked up $1200 from Big Boy for methamphetamine.

On July 5, 2017, SA Patterson, SA Korth, and RCPD Detective Chad Sayles conducted a proffer interview of SOI #8. SOI #8 told the investigators that Yellow Eagle was receiving six ounces to one pound of methamphetamine at a time from SOI #8's source of methamphetamine. SOI #8 also admitted to selling methamphetamine to Yellow Eagle on at least four occasions. SOI #8 estimated that he sold between four and eight pounds of methamphetamine total to Yellow Eagle from March of 2017 until SOI #8 was arrested in Rapid City

On July 29, 2017, SA Hooper spoke with SOI #2. SOI #2 told the agent that he/she had been approached by Yellow Eagle in Wanblee. Yellow Eagle asked SOI #2 if SOI #2 was looking to buy methamphetamine.

On August 1, 2017, SOI #2, under the guidance and control of your affiant and members of the Northern Plains Safe Trails Drug Task Force, conducted a controlled purchase of methamphetamine from Yellow Eagle for $60 at a residence on ▮▮▮▮▮ in Wanblee, SD.

After the controlled purchase, your affiant interviewed SOI #2. SOI #2 told me that Yellow Eagle was sitting in the driver seat of an older model gray Chevrolet Monte Carlo when he/she met with Yellow Eagle. The vehicle had a South Dakota license plate 2F2130. Yellow Eagle went inside the residence to retrieve the methamphetamine then came out and handed it to SOI #2.

SOI #2 left the residence to debrief with the agents. FBI SA Daniel Cooper maintained surveillance of Yellow Eagle and the gray Monte Carlo. SA Cooper observed the vehicle leave that residence and drive to ▮▮▮▮▮ ▮▮▮▮▮.

On August 21, 2017, your affiant spoke with SOI #2. SOI #2 told me that he/she saw Yellow Eagle at ▮▮▮▮▮ on Friday, August 18, 2017. The gray Chevrolet Monte Carlo that Yellow Eagle was previously seen in was also there.

On the afternoon of August 22, 2017, your affiant drove by ▮▮▮▮▮ ▮▮▮▮▮ and observed an older model gray Chevrolet Monte Carlo parked on the north side of the residence.

On August 22, 2017, SOI #2, under the guidance and control of your affiant and members of the Northern Plains Safe Trails Drug Task Force, conducted a controlled purchase of methamphetamine from Cynthia "Cindy" Quiver for $100 at ▮▮▮▮▮ in Wanblee, SD. The substance inside the paper bindle field-tested positive for methamphetamine.

7

After the controlled purchase, DCI SA Preston Patterson interviewed SOI #2. SOI #2 told the agent that Cynthia Quiver was inside the residence and then walked out of the house to meet SOI #2. The methamphetamine was inside folded paper bindles. SOI #2 observed that Cynthia had several other folded paper bindles in a bag on her person. SOI #2 also noticed that the older model gray Chevy Monte Carlo was parked at the residence. SOI #2 saw Norman Quiver outside of the residence when he/she arrived at the home.

Your affiant is aware that Cynthia Quiver is the mother of Tessa Quiver and Norman Quiver and resides at ███████████████.

I am aware that Christopher Yellow Eagle, a/k/a Pork, has been previously convicted of federal felonies in violation of 18 U.S.C. § 924(c) and 21 U.S.C. §§ 846 and 841(a).

### AUTHORIZATION REQUEST

Based on the foregoing, I respectfully submit there is probable cause to believe that the RESIDENCE and vehicles as described in Attachment A may contain evidence as detailed in Attachment B of offenses in violation of 18 U.S.C. § 922(g)(1) and 21 U.S.C. §§ 841(a), and 846, committed by Yellow Eagle, Quiver, and others.

WHEREFORE, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. 2703(c)(1)(A), it is requested that the Court issue a warrant and Order authorizing agents of the BIA, FBI and SD DCI to execute the requested warrant.

Dated this 23rd day of August, 2017.

Justin M. Hooper, Special Agent
United States Department of Interior
Bureau of Indian Affairs
Division of Drug Enforcement

Subscribed and sworn to me in person on August 23rd, 2017.

Daneta Wollmann
U.S. Magistrate Judge
District of South Dakota

8

REDACTED

ATTACHMENT A

- ███████████████ near Wanblee, South Dakota 57757; described as a white/tan, single-story, single-family residence on the north side of SD Highway 44

- Chevrolet Monte Carlo, SD License Plate 2F2130, VIN 1G1GZ37Z2GR148255

- maroon 2-door Ford Explorer parked on the south side of the residence

- older model green Ford pickup parked on west side of the residence

- gray car parked on the west side of the residence

- any other vehicles present or arriving at house during execution of search warrant

- persons present or arriving at house during execution of warrant